UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
**MARY MCGONAGLE,**                         )
**PAUL MCGONAGLE, JR., and**                )
**SEAN MCGONAGLE,**                         )
                                            )
      **Plaintiffs,**              )
                                            )    **Civil Action No.**
**v.**                                      )    **15-12003-FDS**
                                            )
**UNITED STATES OF AMERICA,**               )
                                            )
      **Defendant.**               )
_____)

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

This lawsuit is yet another civil action arising out of the corrupt relationship between the Federal Bureau of Investigation and convicted criminals James "Whitey" Bulger and Stephen "the Rifleman" Flemmi. Plaintiffs in this case are the widow and two sons of Paul McGonagle, Sr., who was murdered by Bulger in 1974. Plaintiffs have brought suit against defendant the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, alleging that the FBI negligently caused them to endure mental anguish by failing to report the location of McGonagle's body for more than twenty years.

The United States has filed a motion to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim. It contends primarily that because a private person would not have owed plaintiffs a duty to report the location of McGonagle's body, the United States has not waived its sovereign immunity under the FTCA. For the reasons stated below,

that motion will be granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the complaint unless otherwise noted.[1]

Paul McGonagle, Sr., was a resident of South Boston, Massachusetts. Mary McGonagle was his wife, and Paul McGonagle, Jr., and Sean McGonagle were his sons.

Paul McGonagle, Sr., was murdered by James "Whitey" Bulger in 1974. (Compl. at ¶ 11). From 1974 until 1995, Bulger and his associate, Steven Flemmi, served as informants for the Federal Bureau of Investigation. (*Id.* at ¶¶ 6, 7). Special Agent John Connolly of the FBI's Boston office served as the "handler" for both Bulger and Flemmi from 1975 until 1990, when he left the FBI. (*Id.* at ¶¶ 8, 9).

Although McGonagle was reported missing in November 1974, his family did not learn the location of his remains until September 2000, when authorities were led to a shallow grave at Tenean Beach in Dorchester. (*Id.* at ¶¶ 10, 15).

In October 2003, Flemmi pleaded guilty to ten counts of murder. (*Id.* at ¶ 12). Nearly ten years later, in July 2013, Flemmi was called as a government witness in Bulger's trial. (*Id.* at ¶ 17). Flemmi testified at trial that during the time he was an informant, he, Bulger, and Connolly regularly met at Tenean Beach. (*Id.* at ¶ 18). Flemmi further testified that during these meetings, Bulger often commented on the fact that McGonagle was buried at the beach, and would even point out the location of the burial site. (*Id.* at ¶ 20).[2]

---

[1] The facts surrounding the sordid relationship between Bulger and certain agents of the FBI have been set out at great length in multiple other sources, and need not be repeated here except in the relatively skeletal form laid out in the complaint.

[2] According to the government, Flemmi's actual trial testimony, which occurred on July 19, 2013, was as follows:

The complaint alleges that though Connolly learned of the location of McGonagle's body during these meetings, he never reported it to local authorities. The complaint further alleges that as a result of Connolly's failure to report McGonagle's burial site, his family endured more than twenty years of mental anguish and distress. (*Id.* at ¶ 25).

### B.      Procedural Background

On June 1, 2015, plaintiffs filed a two-count complaint against the United States of America. Count One asserts a claim for negligence and Count Two asserts a claim for intentional infliction of emotional distress. Both counts are brought under the Federal Tort Claims Act. On August 3, 2015, the United States moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim.

## II.      Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

---

Q.   And who would you meet with [at Tenean Beach]?

A.   The three—John Connolly, James Bulger, myself.

Q.   And when you went to that location, at Tenean Beach, for those meetings, would Mr. Bulger make comments about Mr. McGonagle?

A.   He told *me* where he buried him.

(Gov't Mem. Ex. D) (emphasis added).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

### III.    Analysis

Plaintiffs have sued the United States under the FTCA, alleging negligence and intentional infliction of emotional distress on the part of FBI agent John Connolly. The FTCA acts as a partial waiver of sovereign immunity, rendering the United States liable for certain tort and contract claims. *See* 28 U.S.C. 2671 *et seq*. The grant of jurisdiction to the district courts to hear FTCA claims against the United States is coextensive with the act's waiver of sovereign immunity. Thus, actions that do not fall under the express terms of the FTCA's waiver must be dismissed for lack of subject-matter jurisdiction. *Id.*; *Wood v. United States*, 290 F.3d 29, 35 (1st Cir. 2002).

The FTCA grants jurisdiction to the district courts to hear claims arising from acts of the United States or its employees acting within the scope of their employment to the extent that "the United States, *if a private person*, would be liable to the claimant . . . in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). A claimant against the government must therefore identify some basis on which a private party would be liable for acts analogous to those the government is alleged to have taken. *McCloskey v. Mueller*, 446 F.3d 262, 267 (1st Cir. 2006). As a result, FTCA liability cannot result from "obligations that are peculiar to governments or official-capacity state actors and which have no

private counterpart in state law." *Id.*

The United States contends, in substance, (1) that it has not waived its sovereign immunity under the FTCA for plaintiffs' claims because a private individual would not have owed plaintiffs a legal duty to report the location of McGonagle's remains; (2) that the "misrepresentation" exception to the FTCA applies, and likewise precludes subject-matter jurisdiction; and (3) that plaintiffs' claims are barred by the statute of limitations. Because the Court finds that the first argument is meritorious, it does not reach the misrepresentation exception or statute of limitations issues.

### A.     Count One - Negligence

Count One asserts a claim for negligence based on Connolly's failure to report the location of McGonagle's burial site at Tenean Beach. "Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances." *Guzman v. Pring–Wilson*, 81 Mass. App. Ct. 430, 432 (2012) (quoting *Morgan v. Lalumiere*, 22 Mass. App. Ct. 262, 267 (1986)).[3] "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Cracchiolo v. Eastern Fisheries, Inc.*, 740 F.3d 64, 69 (1st Cir. 2014) (quoting *Jupin v. Kask*, 447 Mass. 141, 146 (2006)); *see also Lev v. Beverly Enterprises–Massachusetts, Inc.*, 457 Mass. 234, 239-240 (2010).

Thus, a claim for negligence may not be sustained without a showing that the defendant owed a legal duty to the plaintiff. *Gorfinkle v. U.S. Airways, Inc.*, 431 F.3d 19, 23 (1st Cir. 2005) (citing *Davis v. Westwood Group*, 420 Mass. 739, 742 (1995)); *O'Gorman v. Antonio*

---

[3] "Since every relevant event in this case occurred in Massachusetts, the substantive law of that jurisdiction constitutes the 'law of the place' for present purposes." *McCloskey*, 446 F.3d at 266-67.

*Rubinaccio & Sons, Inc.*, 408 Mass. 758, 760 (1990). The key issue here is the existence of such a duty—whether a private person in Connolly's position (that is, a person who became aware of the location of McGonagle's body) would have owed a duty to McGonagle's family to report that fact.

### 1.     Common-Law Duty to Report

No Massachusetts case has ever held that a private person has a duty to disclose the location of a dead body to the decedent's family, absent a special relationship. As a general matter, "[u]nder common law, inaction rarely gives rise to liability unless some special duty of care exists." *Hasenfus v. LaJeunesse*, 175 F.3d 68, 71 (1st Cir. 1999) (citing Restatement (Second) of Torts § 314 & cmt. a (1965)). As then-Judge Breyer put it, "a passerby seeing a man drown in a pond may have a moral obligation to extend a helping hand, but he does not necessarily have a legal obligation to do so." *Carrier v. Riddell, Inc.*, 721 F.2d 867, 869 (1st Cir. 1983) (applying Massachusetts law).

Plaintiffs nonetheless contend that such a duty exists, relying in part on the Restatement (Second) of Torts § 868. Section 868 provides:

> One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.

Restatement (Second) of Torts § 868 (1979). Plaintiffs essentially contend that by failing to report the location of McGonagle's corpse, Connolly negligently prevented its proper interment.

Whether Massachusetts courts would follow § 868 is not completely clear. Plaintiffs contend that Massachusetts adopted § 868 in *Kelly v. Brigham & Women's Hosp.*, 51 Mass. App. Ct. 297, 307 (2001). The *Kelly* court, however, merely cited the Restatement in support for the court's holding that a plaintiff need not allege physical consequences of mental distress in

connection with a "wrongful autopsy" claim. *Id.* Even assuming, however, that Massachusetts law would follow § 868, it is unlikely that Massachusetts courts would apply it so as to find an affirmative duty under the facts and circumstances of this case.

The *Kelly* court noted that a claim for wrongful autopsy under Massachusetts law is "based on the general principles governing the tort of negligence." *Id.* at 303. To the extent that plaintiffs' claim here is grounded in § 868 of the Restatement, it similarly must be based on general principles governing negligence. As noted, one such general principle is that absent a special relationship (such as that of a parent and child), the law imposes no duty to assist others affirmatively or to relieve their suffering. *See Doe v. Walker*, 193 F.3d 42, 43 (1st Cir. 1999) (citing *Jean W. v. Commonwealth*, 414 Mass. 496 (1993)). Thus, even under § 868, a person could be found liable only if he had done something affirmatively to prevent a proper interment; he could not found liable if he simply had knowledge of a fact (such as the location of a body) and failed to act.

The complaint does not plead any facts that suggest that a duty to McGonagle's family might arise under the circumstances presented by this case. For example, plaintiffs do not dispute that Connolly did not at any point have control or custody of McGonagle's remains, as would a doctor performing an autopsy. *See, e.g.*, *Kelly*, 51 Mass. App. Ct. at 307. Nor did Connolly assist Bulger in wrongfully burying the body. *See, e.g.*, *Papieves v. Lawrence*, 437 Pa. 373, 375 (1970). Indeed, the Court of Appeals of Ohio has expressly rejected the existence of such a duty under circumstances somewhat similar to the present case: "Assuming that appellee knew about Janice's death and the whereabouts of her remains prior to 1999, appellee had no legal duty to disclose that information to appellants. Where appellee had no duty to disclose such information, her failure to disclose cannot be deemed to constitute intentional infliction of

emotional distress." *Hartman v. Smith*, 2005 WL 1523862, at *4 (Ohio Ct. App. June 29, 2005).

The issue is not Connolly's moral failings, which appear to have been legion. Rather, it is whether a private person in his position, having knowledge of the location of McGonagle's remains, would have had a legal duty to report that fact to his survivors. Under Massachusetts law, such a person would not, and therefore the United States has not waived its sovereign immunity with regard to plaintiffs' claim.

### 2. Statutory Duty to Report

Plaintiffs further contend that Mass. Gen. Laws ch. 38, § 3 creates a statutory duty to report a death by apparent criminal violence. That statute provides:

> It shall be the duty of any person having knowledge of a death which occurs under the circumstances enumerated in this paragraph immediately to notify the office of the chief medical examiner, or the medical examiner designated to the location where the death has occurred, of the known facts concerning the time, place, manner, circumstances and cause of such death:
>
> (1) death where criminal violence appears to have taken place, regardless of the time interval between the incident and death, and regardless of whether such violence appears to have been the immediate cause of death, or a contributory factor thereto . . . .
>
> A physician, police officer, hospital administrator, licensed nurse, or licensed funeral director, within the commonwealth, who, having knowledge of such an unreported death, fails to notify the office of the chief medical examiner of such death shall be punished by a fine of not more than five hundred dollars.

Mass. Gen. Laws ch. 38, § 3. The United States contends (1) that the statute does not create a private right of action and (2) that the statute does not impose a duty that runs to the family members of a deceased person.[4] At oral argument, plaintiffs appeared to concede the first point—that § 3 does not create a private right of action—but instead argued that the statute

---

[4] The United States also argues that even if the statute creates a duty, it did not become effective until 1993, three years after Connolly left the FBI. At oral argument, plaintiffs represented that "legislative history" and "predecessor statutes" supported the existence of a similar duty prior to 1993, (Hrg. Tr. 19:10-19), but did not cite or otherwise supply the Court with relevant authority. Regardless, resolution of that issue is unnecessary for the reasons discussed in this memorandum and order.

created a duty to report McGonagle's death. (Hrg. Tr. 20:4-10).

Although the language of ch. 38, § 3 does create a duty for "any person having knowledge of a death" resulting from criminal violence to report it, the duty it creates is to report the death to the medical examiner. *See* Mass. Gen. Laws ch. 38 § 3 ("It shall be the duty of any person having knowledge . . . to notify the office of the chief medical examiner."). The statute's language simply does not create a duty to report to the deceased's family. While it may be true that a disclosure to the medical examiner might inevitably lead to disclosure to the family, it does not follow that a duty runs directly to the family from a person with knowledge of the body's location.[5]

Finally, the Court must be mindful that in considering claims made under the waiver of sovereign immunity under the FTCA must be construed strictly. *Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014). In the absence of a reasonably clear common-law or statutory right to recovery, federal courts should not create new bases for liability. *See Nicolaci v. Anapol*, 387 F.3d 21, 27 (1st Cir. 2004) (the federal courts "should be cautious about pushing state law to new frontiers").

In short, although Connolly may have been aware of the location of the remains, the Court concludes that a private person in his position would not have owed a legal duty to the McGonagle family to report that knowledge. Because a private person in Connolly's position would not be liable to plaintiffs for negligence, the FTCA does not waive sovereign immunity for their claims against the United States. Count One will therefore be dismissed.

---

[5] Mass. Gen. Laws ch. 38 § 4 requires the chief medical examiner to "carefully inquire" into the circumstances of a death when notified in accordance with § 3.

**B.**     **Count Two – Intentional Infliction of Emotional Distress**

Count Two asserts a claim for intentional infliction of emotional distress.  "In the absence of evidence sufficient to support findings of circumstances adequate for a duty to act affirmatively, however, [a] failure to act cannot serve as a basis for a successful claim of intentional infliction of emotional distress."  *Armstrong v. Lamy*, 938 F. Supp. 1018, 1049 (D. Mass. 1996) (citing *Mitchell v. Subramanya*, 27 Mass. App. Ct. 365, 368 (1989)).  Thus, in the absence of a legal duty to plaintiffs to report the location of McGonagle's remains, a private person in Connolly's position would not be liable for intentional infliction of emotional distress.  As with Count One, the FTCA's waiver of sovereign immunity does not apply.  Count Two will therefore be dismissed.

**IV.     Conclusion**

Whatever crimes Paul McGonagle, Sr., may have committed, he did not deserve to be murdered by Whitey Bulger, and his family deserved to know of the circumstances of his death and location of his body.  Furthermore, this Court does not intend to condone the conduct of Special Agent Connolly in any respect.  It does not follow, however, that McGonagle's survivors have a claim for money damages against the United States.  The government permits itself to be sued only under certain circumstances, and the circumstances here do not qualify.

Accordingly, and for the foregoing reasons, the motion to dismiss is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated:  January 5, 2016                         United States District Judge